IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NIKLAS HARTMANN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ANDREW J. DAVIDSON, in his official capacity as Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services, and any successor in this position, *et al.*,<br><br>　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:24-cv-02317-BT |

## **MEMORANDUM OPINION AND ORDER**

Defendants move to dismiss this pro se civil action asserting claims under the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq., and the Fifth Amendment Due Process Clause. For the following reasons, the Court **GRANTS** the Motion (ECF No. 34).

### *Background*

Plaintiff Niklas Hartmann's claims arise from the denial of his Form I-140 Immigrant Petition for Alien Worker, in which he sought to be classified as an alien of extraordinary ability under 8 U.S.C. § 1153(b)(1)(A) for his work as an influencer marketing manager.[1] Second Am. Compl. at 3, ¶ 11 (ECF No. 29); USCIS Mot. at 2

---

[1] The EB-1A visa Hartmann seeks is colloquially known as the "Einstein" or "genius" visa. *Amin v. Mayorkas*, 24 F.4th 383, 386–87 (5th Cir. 2022).

(ECF No. 34). After its initial review of Hartmann's petition, U.S. Citizenship & Immigration Services (USCIS) issued two Requests for Evidence seeking additional information, and in response to each request, Hartmann supplied additional evidence. *See* USCIS Mot. at 2 (ECF No. 34); Second Am. Compl., Ex. 4 (ECF No. 29-4) (USCIS request for evidence), Ex. 5 (ECF No. 29-5) (same). Then, after an alleged 20-month delay in processing the petition, Hartmann sued to compel USCIS to process his petition. *See generally* Original Compl. at 1, 5, ¶¶1, 3 (ECF No. 3).

During the pendency of this action, USCIS denied Hartmann's EB-1A petition (the "initial decision"). Second Am. Compl., Ex. 6, at 1 (ECF No. 29-6). USCIS concluded that, upon review of Hartmann's petition and supporting evidence:

> [T]he evidence does not establish that [Hartmann] meets at least three of the ten criteria found at 8 C.F.R. Section 204.5(h)(3). USCIS . . . examined the entire record and has determined that [Hartmann] is not one of that small percentage who have risen to the top of the field of endeavor.
>
> Furthermore, the evidence does not show that [Hartmann's] achievements set him significantly above almost all others in the field at a national or international level and does not establish sustained acclaim.

*Id.* at 7. Hartmann then amended his federal complaint, challenging USCIS's initial decision and asserting claims under the APA and the Fifth Amendment. *See generally* Second Am. Compl. (ECF No. 29) (Hartmann's live pleading).

Later, USCIS sua sponte vacated its initial decision and reopened Hartmann's petition because it found that the earlier requests for evidence did not provide Hartmann with "sufficient detail to adequately notify [Hartmann] of the evidentiary deficiencies in the record." USCIS App. at 1 (ECF No. 35). The same day, USCIS also issued a Notice of Intent to Deny notifying Hartmann of evidentiary deficiencies in the record and allowing him the opportunity to submit additional evidence. *Id*. at 3–13. And on August 6, 2025—after the parties fully briefed USCIS's Motion—Hartmann informed the Court that USCIS issued a second denial of his EB-1A petition (the "second denial"). *See* Pl.'s Not. of Second Agency Action at 1 (ECF No. 44); Pl.'s App. at 3 (ECF No. 45). USCIS did not respond to Hartmann's notice regarding the second denial, and USCIS's Motion is ripe for adjudication.

### *Legal Standards*

#### *12(b)(1)*

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *See Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.*; *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d

3

222, 225 (5th Cir. 1994)). "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001). The Court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Id.* at 916.

Lack of subject matter jurisdiction may be found by looking at "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The plaintiff seeking a federal forum "constantly bears the burden of proof that jurisdiction does in fact exist." *Id.*

*12(b)(6)*

To survive a Rule 12(b)(6) motion, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC,* 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly,* 550 U.S. at 555).

This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows

4

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 679. When the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly,* 550 U.S. at 557).

When applying the plausibility standard, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). But a court may not look beyond the pleadings. *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999). Review is "limited to the complaint, any documents attached to the complaint, and any documents attached to the [motion to dismiss] that are central to the claim and referenced by the complaint." *Smith v. Buffalo Wild Wings,* 2021 WL 4265849, at *2 (N.D. Tex. Sept. 20, 2021) (Fitzwater, J.) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010)); *see also Inclusive Communities Project, Inc. v. Heartland Cmty. Ass'n, Inc.,* 399 F. Supp. 3d 657, 665 (N.D. Tex. 2019) ("In ruling on [a Rule 12(b)(6)] motion, the court cannot look

5

beyond the pleadings.") (citing *Spivey,* 197 F.3d 772, 774 (5th Cir. 1999)), *aff'd,* 824 F. App'x 210 (5th Cir. 2020).

### *Analysis*

#### *Fifth Amendment*

Hartmann alleges that USCIS's adjudication of his EB-1A visa petition violates his Fifth Amendment right to procedural due process "by failing to provide a fair and impartial adjudication of [his] I-140 petition." Second Am. Compl. at 16, ¶ 61 (ECF No. 29). However, USCIS argues that Hartmann fails to state a Fifth Amendment claim because he does not allege a protected property interest in his petition. USCIS Mot. at 9 (ECF No. 34). The Court agrees.

"[T]he touchstone of due process is protection of the individual against arbitrary action of government." *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 845 (1998) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974)). "To state a claim under the Due Process Clause, Plaintiff must first identify a life, liberty, or property interest protected by the" Fifth Amendment, "and then identify a [federal] action that resulted in a deprivation of that interest." *Poloceno v. Dallas Indep. Sch. Dist.,* 2019 WL 2568681, at *3 (N.D. Tex. June 21, 2019) (Scholer, J.) (internal quotation marks omitted) (quoting *Blackburn v. City of Marshall,* 42 F.3d 925, 935 (5th Cir. 1995)), *aff'd,* 826 F. App'x 359 (5th Cir. 2020). "Property interests are not created by the text of the Constitution itself, but by other sources such as 'state law, local ordinances, contracts, and mutually explicit understandings.'" *Wrecker Works, L.L.C. v. City of Aberdeen,* 751 F. App'x 413, 417 (5th Cir. 2018) (citation omitted).

Hartmann claims that he has a property interest in the "fair and impartial" adjudication of his EB-1A petition. *See* Pl.'s Resp. at 2, 13 (ECF No. 39) (referring to a property interest). But as USCIS correctly notes, the Supreme Court has unequivocally held that "an alien seeking initial admission to the United States requests a privilege and has *no constitutional rights* regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (emphasis added). And numerous federal district courts across the country have held that an applicant does not have a constitutionally protected interest in an EB-1A visa. *See, e.g.*, *Krasniqi v. Dibbins*, 558 F. Supp. 3d 168, 191 (D.N.J. 2021) (granting summary judgment on the plaintiff's Fifth Amendment claim that USCIS did not properly consider record evidence because "there is no precedent recognizing a constitutionally protected interest in an extraordinary ability visa"); *Melnattur v. USCIS*, 2022 WL 18086892, at *7 (D. Neb. Sept. 12, 2022) ("[Plaintiff] had no protected liberty interest in an extraordinary-ability visa."); *Hamal v. U.S. Dep't of Homeland Sec.*, 2020 WL 2934954, at *4 (D.D.C. June 3, 2020) (noting that the plaintiff did not allege "facts that plausibly demonstrate a cognizable property or liberty interest in the 'extremely restrictive' extraordinary ability designation").

Hartmann tries to save his Fifth Amendment claim by clarifying that he "does not claim a constitutional right to the approval of his EB-1A petition" but rather his Fifth Amendment claim is premised on USCIS's "failure to follow lawfully promulgated rules, [which is] a classic procedural due process violation[.]"

7

Pl.'s Resp. at 13–14 (ECF No. 39). In support of this argument, Hartmann cites to 8 C.F.R. § 204.5(h); *Board of Regents v. Roth*, 408 U.S. 564 (1972); and *Accardi v. Shaughnessy*, 347 U.S. 260 (1954). *Id.* at 14. None of Hartmann's cited authorities support his argument.[2]

First, Hartmann claims that 8 C.F.R. § 204.5(h) grants him a constitutionally protected interest because the regulation "contains substantive regulatory criteria limiting agency discretion." Pl.'s Resp. at 2 (ECF No. 39). However, nothing in this regulation grants Hartmann a constitutionally protected interest in the adjudication of his EB-1A petition. Rather, this regulatory provision merely sets forth the type of evidence needed to show the applicant is of "extraordinary ability" in a particular field of expertise. *See* 8 C.F.R. § 204.5(h).

Hartmann next cites *Roth* for the proposition that "a constitutionally protected interest arises not from a guarantee of a particular outcome, but from rules or understandings stemming from an independent source such as statute or regulation." Pl.'s Resp. at 14 (ECF No. 39). However, *Roth* dealt with a college professor who claimed he was entitled to a hearing and reasons for the university's

---

[2] The inaccuracies in Hartmann's brief are typical of unverified, AI-generated filings, which have become an increasing concern for courts in recent years. While no federal or local rule explicitly prohibits the use of artificial intelligence in litigation, and Hartmann disclosed his use of generative AI in preparing his brief, *see* Pl.'s Resp. at 1 (acknowledging that Hartmann "used generative AI"), all parties—including those proceeding pro se—must fulfill their obligations under Federal Rule of Civil Procedure 11(b), which requires lawyers and unrepresented parties alike to certify that, after a reasonable inquiry, their legal contentions are warranted by existing law. Consequently, this duty necessitates a careful review of AI-generated statements and citations to ensure accuracy.

decision not to renew his employment contract. *Board of Regents v. Roth*, 408 U.S. 564, 566 (1972). Despite Hartmann's contentions, *Roth* did not hold that failure to follow lawfully promulgated rules was a violation of due process. In fact, *Roth* found:

> To have a property interest in a benefit, a person clearly must have *more than an abstract need or desire for it*. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

*Id.* at 577 (emphasis added). Hartmann's desire for an EB-1A visa does not rise to a constitutionally protected property interest. And regardless, USCIS afforded Hartmann due process when it provided him with the opportunity to submit evidence in support of his EB-1A petition, notice of denials, and written explanations for the denials. *See Krasniqi*, 558 F. Supp. 3d at 191 (noting that the plaintiffs received due process because they "received notice of the possible denial of their petitions, were invited to present evidence and arguments, and received a written, reasoned explanation for the denial").

Finally, Hartmann cites *Accardi* without explaining how the case supports his assertion that he has a constitutionally protectable interest in the adjudication of his EB-1A visa petition. Pl.'s Resp. at 14 (ECF No. 39). *Accardi* is a habeas corpus case analyzing regulations prohibiting the Attorney General from dictating the Board of Immigration Appeals' decisions. *Accardi v. Shaughnessy*, 347 U.S. 260,

265–67 (1954) ("The crucial question is whether the alleged conduct of the Attorney General deprived petitioner of any of the rights guaranteed him by the statute or by the regulations issued pursuant thereto."). *Accardi* did not hold that a visa applicant has a constitutionally protected interest in the application, and Hartmann has not identified any rights—statutory, regulatory, or otherwise—guaranteed to him during the adjudication of his EB-1A visa petition. Therefore, the Court **DISMISSES** Hartmann's Fifth Amendment claim because he has not demonstrated a constitutionally protected interest in his petition.

*Administrative Procedure Act*

Hartmann alleges that USCIS's denial of his EB-1A visa petition was arbitrary and capricious under the APA because it mischaracterized evidence, relied on factually incorrect information, omitted key evidence, imposed improper evidentiary burdens, failed to apply the proper legal standard, and failed to consider material evidence. Second Am. Compl. at 5, ¶ 18 (ECF No. 29). In response, USCIS argues that the court lacks subject matter jurisdiction over this claim because "when USCIS reopened Hartmann's petition, that rendered its earlier decision non-final and therefore not subject to review under the APA." USCIS Mot. at 8 (ECF No. 34).

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C § 702. However, "this grant of judicial review is limited to challenges 'made reviewable by statute'

or, if not made reviewable, involving 'final agency action for which there is no other adequate remedy in a court.'" *Kewayfati v. Bondi*, 165 F.4th 342, 349 (5th Cir. 2026) (quoting 5 U.S.C. § 704). Here, only the latter form of judicial review involving final agency action is at issue.

An agency action is final if: "(1) the action 'mark[s] the consummation of the agency's decisionmaking process' and (2) is one 'by which rights or obligations have been determined, or from which legal consequences will flow.'" *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). Stated differently, the question is "whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Id.* at 349–50 (quoting *Franklin v. Mass.*, 505 U.S. 788, 797 (1992)). If there is no final agency action, the court lacks subject matter jurisdiction. *Texas v. Equal Employment Opportunity Comm'n*, 933 F.3d 433, 440 n.8 (5th Cir. 2019).

Hartmann contests the initial decision denying his EB-1A petition. Second Am. Compl. at 1–2, ¶ 1 (ECF No. 29); *see also id.*, Ex. 6 (ECF No. 29-6) (providing the initial decision denying Hartmann's EB-1A visa petition). However, the initial decision is not the final agency action here because USCIS sua sponte reopened Hartmann's case, withdrew the initial decision, and issued another decision in August 2025. Pl.'s Notice of Second Agency Action at 1 (ECF No. 44) ("Plaintiff respectfully notifies this Court that on August 6, 2025, [USCIS] issued a new denial of Plaintiff's I-140 petition."); *see also* Pl.'s App. at 3 (ECF No. 45) (providing

11

second denial); USCIS App. at 1 (ECF No. 35) (decision reopening Hartmann's petition and withdrawing the initial decision).

USCIS is permitted to "reopen or reconsider a previously final action on its own accord, and federal courts across the country have consistently held that it is within the agency's power—and often in the party's own interest—to reopen and reconsider previously 'final' agency actions." *Ahlijah v. Nielsen*, 2018 WL 3363875, at *2 (D. Md. July 10, 2018) (citing 8 C.F.R. § 103.5(a)(5)), *aff'd*, 755 F. App'x 290 (4th Cir. 2019). Although the initial decision previously constituted a final agency action, it is no longer the "consummation of USCIS's decisionmaking process because it was vacated following USCIS's reopening of the administrative proceedings." *Castillo Castillo v. Jaddou*, 2023 WL 5015433, at *3 (S.D. Fla. Aug. 6, 2023); *see also Balakirev v. Jaddou*, 2024 WL 3398391, at *5 (D. Neb. July 10, 2024) ("That reopening and the agency's issuance of its Second Decision, therefore, render the First Decision non-final for purposes of the APA as that initial determination no longer represents the agency's 'last word' on [the plaintiff's] petition."); *Pena v. Garland*, 2022 WL 996574, at *1 (5th Cir. Apr. 4, 2022) (per curiam) ("The grant of a motion to reopen that vacates or materially changes a formerly final order renders the order nonfinal[.]"). Thus, "no legal consequences flow from the [initial decision] because USCIS has issued the now-operative [second denial] that does not rely whatsoever on the [initial decision]." *Castillo Castillo*, 2023 WL 5015433, at *3. As USCIS's initial decision does not constitute final agency action, the Court lacks subject matter jurisdiction over this claim.

12

Hartmann urges the court to exercise subject matter jurisdiction over his APA claim under the time-of-filing and voluntary cessation doctrines. Pl.'s Resp. at 1, ¶ 1 (ECF No. 39). Hartmann characterizes USCIS's reopening of his application as a "tactical maneuver to evade judicial review" rather than a "genuine reevaluation." *Id.* at 1–2, ¶ 1. As to Hartmann's invocation of the time-of-filing doctrine, he cites *Newman-Green, Inc. v. Alfonzo-Larrain*, which states that "[t]he existence of federal jurisdiction ordinally depends on the facts as they exist when the complaint is filed." 490 U.S. 826, 830 (1989). However, Hartmann ignores the sentence immediately following his cited quotation: "Like most general principles, however, this one is susceptible to exceptions[.]" *Id.* USCIS's reopening of Hartmann's application rendered the initial decision non-final, which deprives the court of subject matter jurisdiction under the APA. Therefore, the time-of-filing doctrine does not aid Hartmann's position.

Next, Hartmann argues that the court should invoke the voluntary cessation doctrine to "prevent [USCIS] from using procedural reversals to insulate themselves from judicial review." Pl.'s Resp. at 11 (ECF No. 39). Hartmann states that USCIS used the reopening as a litigation strategy, and the second notice of intent to deny contains "virtually identical reasoning to the final denial [he] initially challenged." *Id.* at 12 (emphasis omitted). However, as stated above, 8 C.F.R. § 103.5 permits USCIS to reopen and reconsider its previous denial of Hartmann's EB-1A petition. *Ahlijah*, 2018 WL 3363875, at *2. Further, despite Hartmann's characterization, USCIS did not reopen his case in name only or as a

13

litigation strategy. Rather, USCIS issued a new request for evidence and a reasoned decision. *See* USCIS App. at 1–13 (ECF No. 35); *Castillo Castillo*, 2023 WL 5015433, at *3 (stating that USCIS did not reopen the administrative proceedings in name only because it issued a new request for evidence and a new decision); *Balakirev*, 2024 WL 3398391, at *5 (finding that USCIS did not reopen the application in "name only" because, among other reasons, USCIS's notice of intent to deny communicated areas of improvement in the record evidence and provided the plaintiff with "a genuine opportunity to elaborate upon his original evidence and further support his petition"). Therefore, the voluntary cessation doctrine does not vest this Court with subject matter jurisdiction.[3]

Because USCIS "exercised its lawful authority to reopen and reconsider" the initial decision, Hartmann's APA claim that challenges only the initial decision must be dismissed. *Ahlijah*, 2018 WL 3363875, at *2. However, this dismissal does not prevent Hartmann from filing a similar APA claim challenging the second denial. *Id.* at *2, n.2.

---

[3] In its Motion, USCIS also argues that the reopening and vacatur of the initial decision renders Hartmann's APA claim moot. USCIS Mot. at 5–6 (ECF No. 34). However, USCIS made this argument before Hartmann filed notice of the second denial. As the Court finds that it does not have subject matter jurisdiction over Hartmann's APA claim because Hartmann has not challenged a final agency action, it pretermits discussion of mootness. *Balakirev*, 2024 WL 3398391, at *5 (determining that the court "need not determine whether the plaintiffs' challenge to the First Decision is moot" because the court already found that there was no final agency action).

## *Conclusion*

For the reasons stated, the Court **GRANTS** USCIS's Motion to Dismiss (ECF No. 34) and **DISMISSES** Hartmann's claims without prejudice. Accordingly, the Court **TERMINATES AS MOOT** Plaintiff's Motion to Supplement the Administrative Record (ECF No. 32).

**SO ORDERED.**

March 12, 2026.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE